Good morning, Your Honors. Terry Law on behalf of the Petitioner, Mr. Chavez. May it please the Court. May I please reserve a couple of minutes, two minutes for rebuttal, please? Thank you. Your Honors, the Petitioner, Mr. Chavez, in this case, was wrongfully denied his day in federal court. The District Court's dismissal of Petitioner Octavius' petition with prejudice and its refusal to consider the merits of Petitioner's Batson claim on the grounds that he had procedurally defaulted in state court was erroneous. Under the law as it existed at the time that the District Court entered its judgment in this case, which was simply made certain and clarified more recently with the California Supreme Court's decision in People v. Yeoman, it is clear that the Petitioner's Wheeler motion that was raised in the state court constituted a contemporaneous objection under California law, a contemporaneous objection to the prosecutor's discriminatory exercise of peremptory challenges. Let me ask you, at the time you mentioned the word, is it the time of the District Court determination, the court of appeals, or when the Supreme Court denied review? What is our mark that we look at to see if there's a consistent contemporary objection rule? We, Your Honor, we would look at the time in this case would be in state court, the time that the objection or challenge was required to be made, and whether or not the October 97. That's correct, Your Honor. And, of course, the case that we have to look at, I suppose there's reasons for distinguishing several of the cases, but when the Supreme Court of California speaks in Yeoman's case and says there's an inconsistency, why we have to pay attention. But I want to call to your attention and see if you can explain this to me, that the Supreme Court cited, first said that the position of the government was correct as of certain cases, which they cited in 93, et cetera, and then said, but subsequently we have changed that and cite some other cases. And the first case was Catlin. That's the first case. There are subsequent cases. But Catlin was a 201 case. So if we're focusing upon October of 97, by the Supreme Court determination, there was a consistent contemporaneous objection rule in October 97, and it didn't change until 201 in Catlin. So doesn't Yeoman's, by the face of it, tell us that there was a consistent contemporaneous objection rule as of October 97, but was not by 201? Your Honor, Yeoman tells us that in more recent cases that Your Honor has cited in that site, yes, those cases were cited as cases where, in fact, the Court had allowed a Batson challenge, a Federal claim to be heard on appeal when it had not been phrased as such or coined as such in State court. It had been only termed a Wheeler motion. But the number one, the citation to those cases, those are not by any means the only cases, State court cases, number one, that were that had looked at or that where a Federal claim had been raised and it had not been raised in State court. Certainly the contemporaneous objection rule was well established in 1997. There's no question about that. And the general contemporaneous? The general. For all issues? Yes, Your Honor. Clearly that's true. But the Supreme Court here identified this particular contemporaneous objection rule and said that prior to that time the government was right, but after 2001 the government was wrong. I respectfully disagree, Your Honor, that in fact that what the Court is saying in Yeoman is that prior to this time this was the law, that prior to this time the The Court was saying that in many of the previous cases the law in California or the application of the law in California has always been inconsistent. And in fact, this circuit has on numerous occasions said that the manner in which Wheeler is being applied is not correct. Well, they have taken, in California we have taken here, that when you make a Wheeler objection, you get a Baxter objection. But the issue here was not that. It was whether the contemporaneous objection rule was applied. And under the Supreme Court they said, I just want you to focus on this language. The people contend defendant waived his Federal claim by failing to raise it below. That's waiver. And then cites some decisions and said they support the people's position. But in more recent cases. So what the Supreme Court is saying, regardless of whether you treat Batson or not, we're here talking about a different issue. That's waiver. And in this they said the people, California prosecutor, was right until 2001. And I don't know how we get around that language for your case. Well, again, Your Honor, initially I respectfully disagree in that we are talking about the Wheeler v. Batson and whether or not, for purposes of the contemporaneous objection, I know certainly there's no dispute that that rule of law has been around for some time. But with respect to what the Court is addressing in Yeoman, and what is directly at issue in this case, is whether or not under the contemporaneous objection rule, the California courts had been applying the, or had been routinely say or consistently dismissing Federal claims where there had not been, Batson had not been asserted below, and therefore there had been technically a waiver or lack of a contemporaneous objection. So the contemporaneous objection being an objection that African-Americans are being wrongfully excluded from the jury panel, and that, and failure to assert that being a waiver. The question in Yeoman is whether or not, is simply whether or not California courts have been in their inconsistent application of contemporaneous objection in the context of a Wheeler-Batson challenge, whether or not.  The reason I'm asking is because the rule of Fernandez and Polino doesn't seem to me to advance the ball very far. All we say there is that you make a Wheeler objection you can get a Batson review. They didn't deal with the contemporaneous objection rule at all. But Yeoman's does. Well, Your Honor, I believe that contemporaneous, the principle of contemporaneous objection is, again, is the functional equivalent of a waiver or a lack of waiver. It's something the State has to raise. If the State doesn't raise, it does not become an issue. So you can have Polino and Fernandez talking about when you raise Wheeler you've raised Batson and you don't get into contemporaneous objection unless it's been raised. Yes. But then it's Yeoman's that straightens out the contemporaneous, the waiver part. Yeoman certainly straightens it out or clarifies and makes certain for the California courts that what this circuit has held in numerous cases on review, which is that you need not phrase it as a Batson challenge. Basically, you know, principles of fairness and fair practice and the fact that there is an undisputed factual record that remains the same and it's simply an application of legal principle that doesn't require, you know, any additional burden on the court, it doesn't require, it doesn't prejudice any of the parties, that Yeoman simply says the way that many courts have been applying it, many California courts, is the way that it should be applied routinely. And this Court has said that, well, this Court has made it clear that what we're talking about here is whether or not the district court in dismissing the petition with prejudice here on the procedural bar basis, whether or not that was a sound decision, and the question becomes was there an adequate and independent State law ground. And when it's a procedural bar that is utilized by the State court as it was here to preclude the Batson claim, the definition or standard that's applied for purposes of whether there's an adequate and independent State ground is, again, whether or not the law that we're talking about, the procedural rule, which here is contemporaneous objection in the context of Wheeler-Batson motion, whether or not that rule has been clearly and consistently applied. So even absent Yeoman, Yeoman, we submit, is completely, decides this issue in our favor. But even had Yeoman not even been decided, and again, and it was to the, thank you to counsel on that opinion, because the argument that I asserted in the opening brief that I believe equally supports, even absent Yeoman, the vacating of the district court's decision in this case, is that it is clear prior to Yeoman, and Yeoman just elucidates this, that California courts were not consistently applying the contemporaneous objection rule in the context of a Wheeler-Batson motion. Sometimes the courts would say, it's okay if you didn't assert Batson. We'll still look at it. Sometimes a court would say, you know, you had to technically, you had to say Batson or we won't look at it. And the law in this, this Court's law, you know, this Court's position is clear that that type of inconsistency and lack of uniformity among the State court there is, renders the procedural bar that was utilized here by the State court a bar that is not, does not constitute an adequate and independent State law ground, simply because of the fact that it was inconsistently and not uniformly applied by the California courts, which is what Yeoman recognizes and says you need to, you need to do it and this is how it's to be done, you know, meaning this is how you should, you should not require Batson to be asserted. But that's all Yeoman says. You agree, though, that this has to be inconsistent as of October 97? That's our target date. We put ourselves in the position of where we are in October 1997 and say, is there a consistent contemporaneous objection rule on this issue? You know, if I may, Your Honor, I actually tend to, I'm actually going to change my position on that. What case did you rely on? The cases are rather clear that your first position is right. What case do you rely on to want to change your position? Well, I don't have a particular case at hand. I certainly could submit something for Your Honor. But if Your Honor would just indulge me a moment to say that without authority, to state that the issue that is before the Court on review, and that being here, in this case or any case, initially the appellate court, and so here in State Court upon the appeal to the California Court of Appeals, the appellate court and California appellate court initially ruled that it was, it was at the time when the California appellate court ruled, the California appellate court looked at whether or not, you know, what the law was in California at that time. So for purposes of whether or not the law was clearly established or the application of the, it's whether the application of that procedural bar. What date, what date are you professing? We look at the laws of today, this very day? No, it certainly would be at the initial, at the latest I believe it would be at the  What initial stage of review? Wouldn't it be the California Court of Appeals? Because the Supreme, yeah, because the Supreme Court denied without opinion. So under Y.L. Hearst or whatever that case is, we look through that and we look to the because we look at where, this is a procedural bar and we have to examine whether it's an independent and adequate consistently applied rule at the time of the denial. Because otherwise it's not really relevant to look at any other time. It has to be when the court denied the claim, whether it was consistently applied, because the, that is the action, the denial of the claim on an independent procedural State ground is the action that creates the procedural bar. Isn't that right? That's absolutely right. I don't know why you were going with a different date. I think I was just, I was just taken a little bit aback, you know, by, wasn't, wasn't, you know, quite prepared on the question. But I think that, I mean, Your Honor is absolutely correct. And I couldn't have said it more eloquently myself. But I think that the, as Your Honor has explained, we're looking at the latest, for purposes of Federal court review of, on the habeas petition, the effective and the operative opinion is the opinion of the California Supreme Court that effectively affirmed. All right. Well, you're well over your time, and I have to admit I took a lot of it. But do you have any questions? Thank you. Good morning, Your Honors. Deputy Attorney General April Rutherford, on behalf of C. H. Terhune. I'd just like to respond to some of the questions that the Court had for Petitioner. As for when the default occurred, that would be when the Court of Appeal issued its opinion, which was on November 30th, 1999. And if the Court looks for a reference for that, it's in the excerpts of record at page 27. It was November 98, wasn't it? The Supreme Court was in February of 99. Well, can I grab the excerpts of record? Oh, it's all right. I believe it was November 30th, 1999. And then the Supreme Court decision was December 30th, 1999, which would still be well before People v. Catlin, which did not occur until after that time. So even if the default occurred definitely prior to the cases wherein the Supreme Court stopped applying consistently the procedural bar in Batson. So what creates the procedural bar? In the sense of? Well, isn't it the ruling by the State court that applying the independent procedural ground? Yes. I mean, under Fields v. Calderon, the proper time for determining when a procedural rule is firmly established and regularly applied is at the time that the default occurs. So arguably the default occurred in 1997 when it occurred, but it was not imposed until November 30th, 1999. What's the date of the case you're citing to me? And is it a Federal case? Is it a Ninth Circuit case? Fields v. Calderon. Ninth Circuit. 125 F. 3rd, 757, which is when the time of default occurs. All right. Another well-written case, too. Okay, but because the default occurs then, does the State denial of the claim based on a procedural ground also occur then? For that, I think you'd have to look at Bennett v. Mueller, another well-written case. Yes. At the time the default occurred? No. There's no procedural bar until the State court says there's a procedural bar. Right. Okay. So that's when it denies the claim on that ground. Right. Yes, Your Honor. All right. So when was that date in this case? November 30th, 1999, when the Court of Appeals specifically ruled that the claim was, Batson claim was waived. And Yeomans is the first case that makes clear that the California courts are supposed to apply Batson and Mueller as though they were equivalent rules of law. Equivalent in the sense that if you raise a Wheeler objection under the State Constitution, the California Supreme Court is going to conclude that you're also raising a claim under the Federal Constitution that equal protection rights are violated under Batson. And that was in 2003? 2003, yes, Your Honor. Okay. So before then, the California courts were not consistently applying that rule. We would argue that based on both the cases that are cited in our brief and in Yeoman, People v. Garceau, People v. Ashmitz, People v. McPeters. People v. Garceau occurred in 1993, prior to this case. 1991 for People v. Ashmitz. People v. McPeters, which was in 1992, all occurred before the default in this case. And in those cases, they consistently found that if a defendant did not object both on Wheeler and Batson grounds, that the Batson Federal constitutional claim was waived. Now, after the ---- Were there cases that went the other way before the denial of the claim? Your Honor, those haven't been provided to the Court. Obviously, if the Court would like additional briefing of ---- People v. Jackson, 1996, and then there's another one, 1994, that goes the other  Turner. Turner's the 94 case. I believe Turner applied the bar. I believe that People v. Turner, it's my understanding of the reading of that case, that they actually applied the Batson waiver in that case. But as this Court has found in Moran v. McDaniel, that it's just a vast majority of the cases in determining whether the procedural bar has been consistently applied. But you say vast majority, but if there are cases that didn't do it that way, that makes it not consistent. Right. Okay? So you can see there were cases that did not treat it the same way that predated the denial by the California Court of Appeal, right? Based on your ---- Surely you researched both sides of this issue to make sure you were going to be citing us the correct law. Well, it's our position that it's a vast majority of the cases here that are ---- That's not all the cases, right? Right. And to be consistent? Well, we believe already suffices, or a vast majority that you find in your research suffices. Well, we wouldn't argue that it's a vast majority even. I mean, there's two Court of Appeal cases, is that what I understand from Your Honor, that still there's a vast majority of the cases. Two that I have in my bench book. I have to admit, I didn't thoroughly research California law myself on those. Okay. In this case, it's never been brought forward that it's not consistently applied by Petitioner. We allege that it was consistently applied. It's our understanding of Bennett v. Mueller that the bar, that our obligation to rebut the bar doesn't occur until they've provided some sort of their burden of showing that it wasn't consistently applied. Right. But all they need to do is assert that as a defense or a response to your claim. It's basically a mere allegation, and the burden of proof shifts to the government. Right. And we didn't, I mean, we didn't believe that Petitioner's opening brief met that burden, but if Your Honor feels that it's differently and we haven't proven that it's consistently applied, then obviously this Court is going to find that it needs to be returned to the district court to have the merits responded to. Do you think it needs to be remanded to look at the cases and see if it was consistently applied, or is that what you're suggesting? Your Honor, I think certainly that is an appropriate remedy. My argument would be that it's been consistently applied. If that isn't sufficient evidence before this Court, then it's appropriate to return it to the lower court to make that determination. Why would we send it back to determine? It seems to me that if, unless I'm mistaken on the issue that's before us, we have to decide as of the date of this case was the law being consistently applied in California, we would look to the cases that were decided in California prior to 1999 or 201, whichever one you choose. Right. And that's the job of counsel, I would think. Do you conclude that your briefs are insufficient to tell us whether or not the contemporary rule was consistently applied prior to the date that's whichever date we choose is the one that's going to be followed here, which I thought was October 97, but could be 99? Are we lacking in that research by the briefs? Well, Your Honor, we would argue that we've shown sufficient evidence of consistent application prior to the default. But in the cases, you've cited the cases that show consistent application. Right. And is it what you're saying is that there are no cases that are in the opposing briefs that show it's an inconsistent application as of October 1997? Our argument would be that there's absolutely no authority in the briefing from Petitioner that shows that prior to the default that it was not consistently applied. Certainly, Catlin and those cases that came afterwards that have been cited by Petitioner show that it was inconsistent application. But as far as my reading of the briefs, there's no cases cited by Petitioner that the prior cases were inconsistently applied. Why did the Supreme Court in Yeomans then feel it needed to make this law really clear in 2003? I think because the Court started changing in 2001. I think before that date, it was very consistently applied. But in 2001, Catlin and the other case, I believe it's the other cases is Catlin and the one in Farm in 2002 decided that the Batson claim was moot once they determined that the Wheeler challenge was going to be denied. Catlin in 2001 and Farnan in 2002. Yes. Those cases which occurred after this case. And so from our reading of People v. Yeoman, it was concerned about those inconsistency and wanted to, you know, address that consistency and those inconsistency in those recent cases. Your Honors, unless the Court has further questions, we'd be willing to submit. All right. Thank you. Thank you. You're well over time, but if you just have one point. One moment. And that's just, Your Honor, to cite that, to add that in addition in our opening brief as cited, I think Your Honor referred to People v. Jackson. That's a 1992 decision. But also in footnote 4, there's People v. Vera and People v. Blanco, 97 and 92, which are not Wheeler cases, but those are California court cases where the California courts have held that you can assert a Federal claim even if you haven't asserted any State claim that's even remotely similar. So there's been an inconsistency well before this case, just in the contemporaneous objection rule, actually. Were these contemporaneous objection rules? Yes, Your Honor. Each case that you cited were contemporaneous objection rules? Yes. People v. Vera, yes. Then your assertion is that your adversary is wrong and misread your cases, for in fact, you had showed contemporaneous objection rule case at the California court prior to October 97. That's correct, Your Honor. And that Justice Wardlaw has said it probably most accurately, and that is that. I suppose we'll have to look at Jackson, which you cited in your brief, and the footnote before and see which of you two attorneys is correct. Thank you very much. Thank you, counsel. Chavez v. Terhune will be submitted and will take up U.S. v. Cabrera-Rosario. Thank you.
judges: Wallace, T. G. Nelson, Wardlaw